**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MILTON W.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Case No. 3:23-CV-1498-MAB**[2] |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Milton W. is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and DIB on December 27, 2020 (Tr. 144-50) and completed his application on February 22, 2021 (Tr. 152-53). Plaintiff's application was initially denied in July 2021 (Tr. 79-82) and again in February 2022 following his request for reconsideration (Tr. 83-88). Plaintiff then requested a

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 8).

hearing before an Administrative Law Judge ("ALJ"), which occurred on August 1, 2022 (Tr. 30-54). Following the hearing, ALJ Roxanne Fuller issued an unfavorable decision on August 29, 2022 (Tr. 10-29). Plaintiff timely filed a request for review (Tr. 139-42), but that request was denied by the Appeals Council (Tr. 1-6). Accordingly, the ALJ's decision became the final agency decision and Plaintiff exhausted his administrative remedies.

Plaintiff filed his Complaint with this Court on May 2, 2023 (Doc. 2). Thereafter, the Commissioner submitted the Transcript of the Administrative Record on June 29, 2023 (Doc. 10). Plaintiff's social security brief was filed on November 2, 2023 (Doc. 18), and the Commissioner's social security brief was filed on January 29, 2024 (Doc. 23).

### APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step sequential analysis. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is presently engaged in substantial gainful activity. *Id.* at § 404.1520(a)(4)(i). If the answer is yes, then the claimant is not disabled regardless of their medical condition, age, education, and work experience. *Id.* at § 404.1520(a)(4)(i), (b). If the answer is no and

the individual is not engaged in substantial gainful activity, the analysis proceeds to the second step. *Id.* at § 404.1250(a)(4).

At step two, the ALJ considers whether the claimant has a medically determinable physical or mental impairment, or a combination of impairments, that is "severe" and expected to persist for at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii), 404.1509. If the answer is no, then the claimant is not disabled. *Id.* at § 404.1520(c). If the answer is yes, the analysis proceeds to step three. *Id.* at § 404.1520(a)(4).

At step three, the ALJ must determine whether the claimant's severe impairments, singly or in combination, meet the requirements of any of the "listed impairments" enumerated in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). *See also* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (list of impairments). A claimant who meets the requirements of a "listed impairment" is deemed disabled. 20 C.F.R. § 404.1520(d). For claimants who do not meet the requirements of a "listed impairment," the ALJ must then determine the claimant's residual functional capacity ("RFC"). *Id.* at § 404.1520(e). "In assessing a claimant's RFC, the ALJ must consider all of the relevant evidence in the record and provide a 'narrative discussion' that cites to specific evidence and describes how that evidence supports the assessment. The ALJ's analysis and discussion should be thorough and '[s]et forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.'" *Passig v. Colvin*, 224 F. Supp. 3d 672, 680 (S.D. Ill. 2016) (quoting SSR 96-8).

At step four, the ALJ must determine whether the claimant retains the RFC to continue performing their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer

is yes, then the claimant is not disabled. *Id.* at § 404.1520(a)(4)(iv), (f). If the answer is no, the analysis proceeds to the final step. *Id.* at § 404.1520(a)(4).

At the fifth and final step, the ALJ must consider whether the claimant can make an adjustment to perform any other work. *Id.* at § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* at § 404.1520(g). Conversely, if the claimant cannot, then the claimant is disabled. *Id.*

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Thus, this Court's task is not to determine whether Plaintiff was, in fact, disabled at the relevant time, but instead to determine whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). "[W]e will reverse only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation and internal quotation marks omitted).

**THE EVIDENTIARY RECORD**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is presented in mostly chronological order and directed to the points and factual allegations raised by Plaintiff. Specifically, because Plaintiff challenges the ALJ's conclusion regarding Plaintiff's RFC and past relevant work, the Court's summary of the record focuses upon evidence pertaining to those issues.

Plaintiff alleges his disability began on July 19, 2019 (Tr. 13). Plaintiff worked as a technical service writer in the automotive industry from December 2010 until his alleged onset date in July 2019 (Tr. 36, 39). As a technical service writer, Plaintiff stated he discussed automotive issues with customers, occasionally road-tested vehicles, wrote technical tickets, and worked with mechanics to diagnose cars, order parts, and repair the vehicles themselves (Tr. 36-37). Prior to that position, Plaintiff worked at a Ford Dealership in a managerial role from 2008 to 2010 (Tr. 39, 248). In that role, Plaintiff stated he was involved in "[e]verything from the time the vehicle came into the shop until the time the customer picked it up." (Tr. 39).

Prior to his alleged onset date, Plaintiff visited his primary care physician, Dr. Wade, in January, February and May 2018 (Tr. 306, 308, 310). Those office treatment records document that Plaintiff visited Dr. Wade because of a burn to his hand and then for issues related to diabetes and lower back pain (Tr. 306, 308, 310). Plaintiff also visited Advanced Ankle and Foot Surgeons in 2018 and 2019 for issues related to his toenails and subsequently because of a fracture to his left foot that occurred from kicking a heavy

object (Tr. 16, 270-94). Finally, just before his alleged onset date, Plaintiff again visited Dr. Wade because of a burn to his left hand (Tr. 302-04). At that visit, Plaintiff both denied having any additional complaints and also complained of chronic lower back pain (Tr. 302-04). Dr. Wade's review of systems also noted that Plaintiff was negative for arthralgia (joint pain), back pain and gait problems and that Plaintiff's range of motion ("ROM") was appropriate (Tr. 302-04).

Following Plaintiff's alleged onset date, Plaintiff visited Dr. Adrian Feinerman in August 2020, presumably in connection to a prior benefits application (*see* Tr. 56, 313-19). At that appointment, Plaintiff complained of decreased use of his hands, lower back pain, and shoulder pain, all of which had existed since 2012 (Tr. 314). However, Dr. Feinerman noted that Plaintiff is able to sit, stand, walk, hear, speak, lift, carry, handle objects, and handle funds on his own behalf (Tr. 319). Dr. Feinerman also ordered x-rays, which showed degenerative disc disease at the C6-C7 disk in Plaintiff's back and "degenerative chance/calcification tendonitis without acute abnormality" of his right shoulder (Tr. 324-26).

In March 2021, massage therapist Millie Zey completed a form titled "Summary Impairment Questionnaire" (Tr. 327-28). In that form, Ms. Zey indicated that she saw Plaintiff biweekly from June 2012 until April 2021, and that he was now in constant pain in his lumbar and cervical areas (Tr. 327-28). Ms. Zey concluded that the nerve damage was due to an accident and that due to the extreme pain Plaintiff was in, he was unable to work and "it is doubtful it will ever improve to a point he will be able to work." (Tr. 327-28). Ms. Zey further determined that Plaintiff could only sit and stand/walk for zero

to one hours per eight hour workday, and that he could never lift objects weighing zero to five pounds (Tr. 327-28).[3]

Dr. Wade similarly completed a Summary Impairment Questionnaire in March 2021 (Tr. 333-34). He indicated he had last seen Plaintiff in the summer of 2019 (Tr. 333-34). Dr. Wade listed Plaintiff's primary symptoms as facial pain, neck pain, back pain, hand pain with numbness, left eye pain, right arm pain, and generalized pain (Tr. 333-34). Dr. Wade found Plaintiff could sit for two hours and stand/walk for zero to one hours in an eight-hour workday (Tr. 333-34). He further concluded that Plaintiff could occasionally carry up to five pounds, but never anything heavier (Tr. 333-34). Dr. Wade also stated that Plaintiff had to be limited to never/rarely in activities including using upper extremities to handle objects, using hands/fingers for fine manipulations, using upper extremities to reach, and pushing/pulling (Tr. 333-34).

Thereafter, Plaintiff visited Dr. Wade on June 8, 2021 (Tr. 376-77). At that appointment, Dr. Wade determined Plaintiff was suffering from back pain and neck pain (Tr. 376-77). However, Plaintiff reported that he was doing good, although the pain continued (Tr. 376-77). Dr. Wade also noted that Plaintiff's diabetes was being managed effectively and without complications (Tr. 376-77).

Plaintiff visited Dr. Feinerman again on July 2, 2021 (Tr. 338-45). At that appointment, Plaintiff reported substantial limitations in his ability to walk, stand, and

---

[3] As noted by the Commissioner, Ms. Zey's questionnaire was dated March 21, 2021, but she also wrote in the questionnaire that the date of her most recent examination was April 23, 2021 (Tr. 327-28). The Court reaches no conclusion as to the significance of this discrepancy.

sit (Tr. 338-45). Dr. Feinerman conducted an eye exam, which revealed a visual acuity of OD -20/200, OS-20/70 without glasses, and OD-20/50, OS-20/50 with pinhole correction (Tr. 338-45). Dr. Feinerman determined Plaintiff could sit, stand, walk, hear, speak, and lift, carry, and handle objects without difficulty (Tr. 338-45). Dr. Feinerman also conducted an examination which revealed no limitations in the use of either of Plaintiff's hands (Tr. 338-45). Likewise, Plaintiff's range of motion was reported as normal in all areas (Tr. 338-45).

On July 19, 2021, state examiner Dr. Frank Mikell reviewed Plaintiff's medical file and provided his assessment of Plaintiff's RFC (Tr. 56-62). Dr. Mikell found that Plaintiff could stand and/or walk for about six hours in an eight-hour workday and could also sit for six hours in a workday (Tr. 59). Dr. Mikell further opined that Plaintiff could occasionally lift and/or carry 20 pounds, and frequently lift or carry 10 pounds (Tr. 59). Additionally, Dr. Mikell found Plaintiff was limited in his far acuity and "may have some difficultly discriminating fine details at a distance." (Tr. 59). Dr. Mikell ultimately concluded that a finding of disability was not warranted because Plaintiff had the capacity to perform light work, and thus could perform his past relevant work as generally performed in the national economy (Tr. 61).

Plaintiff had another visit with Dr. Wade in September 2021 for ongoing back pain after an accident, along with a burn on his finger (Tr. 373-75). Dr. Wade observed that Plaintiff's blood sugars were under control and his back pain continued but his medication was working (Tr. 373-75). Dr. Wade also noted that Plaintiff was positive for back pain, but his range of motion was appropriate in his back and neck (Tr. 373-75).

Plaintiff returned to Dr. Wade again in October 2021, complaining of cervical, thoracic and lumbar back pain (Tr. 370-72). Plaintiff told Dr. Wade that he was involved in a motor vehicle accident when another driver struck the front of his truck while they were driving approximately 60 miles per hour (Tr. 370). Plaintiff further stated the accident significantly increased his back pain, which adversely impacted his ability to sleep and walk (Tr. 370). Dr. Wade conducted another physical examination and determined Plaintiff had appropriate range of motion in his neck, but experienced cervical pain to palpation and range of motion, and thoracic back pain to palpation, flexion and extension, and lumbar back pain to palpation, range of motion, and bilateral sciatica (Tr. 370-71). Dr. Wade concluded that Plaintiff suffered from chronic back pain and he was not currently meeting his treatment goals due to the motor vehicle accident (Tr. 372).

In November 2021, Plaintiff had his annual wellness visit with Dr. Wade (Tr. 360-69). Plaintiff stated his blood sugars were under control, but he continued to suffer from chronic lumbar back pain (Tr. 360). Dr. Wade reported that Plaintiff's back pain and diabetes conditions were chronic but at their goals (Tr. 365). A physical examination was conducted and Plaintiff's range of motion in his neck was appropriate, but Dr. Wade observed lumbar back pain to palpation and range of motion (Tr. 363-64).

State examiner Dr. Vidya Madala assessed Plaintiff's RFC in January 2022 (Tr. 64-70). Dr. Madala affirmed Dr. Mikell's July 2021 determination in all regards (Tr. 64-70).

Roughly one week later, Dr. Jacinto DeBorja reviewed the state examiner's RFC assessments (Tr. 352-53). Dr. DeBorja criticized the state examiners' assessments for

failing to appropriately consider Dr. Wade's opinions (Tr. 352). However, in considering Dr. Wade's opinions, Dr. DeBorja found Dr. Wade's summary of impairment questionnaire was not supported because it was based upon Plaintiff's subjective complaints and not upon any actual physical examination findings (Tr. 352). Dr. DeBorja agreed with the state examiners in all other regards and concluded that the combination of Plaintiff's impairments would not result in a more restrictive RFC or impose further limitations upon standing and walking, as well as lifting and carrying (Tr. 352).

Plaintiff visited Dr. Wade again in May of 2022 (Tr. 357-59). Plaintiff stated he still suffered from lumbar back pain, but that his blood sugars and lipids were under control (Tr. 357). Dr. Wade conducted a physical examination, finding Plaintiff's range of motion in his neck to be appropriate, but again observing lumbar back pain to palpation and range of motion (Tr. 357-58).

Plaintiff burned his left hand in June 2022 and reported to an urgent care for treatment three days later (Tr. 388-90). The urgent care conducted a physical examination and noted Plaintiff denied muscle pain, muscle weakness, joint pain, joint stiffness in his musculoskeletal system (Tr. 389).

On August 1, 2022, an evidentiary hearing was held before ALJ Fuller (Tr. 30-54). During the hearing, Plaintiff testified that he most recently worked as a technical service writer from 2010 to 2019 (Tr. 36-39). Plaintiff testified that he had numerous responsibilities in that position, including discussing automotive issues with customers, occasionally road-testing vehicles, writing technical tickets, and working with mechanics to diagnose cars, order parts, and repair the vehicles themselves (Tr. 36-37). Prior to

holding that position, Plaintiff testified that he worked at a Ford Dealership in a managerial role from 2008 to 2010 (Tr. 39, 248). In that role, Plaintiff stated he was involved in "[e]verything from the time the vehicle came into the shop until the time the customer picked it up." (Tr. 39).

In relation to his medical conditions and pain, Plaintiff stated he could not stand for more than ten minutes and could only walk 10 to 20 feet at a time (Tr. 41-42). Plaintiff estimated he could likely pick up an object weighing five pounds currently, and would experience back and shoulder pain if he attempted to carry anything heavier (Tr. 42-43). In relation to his alleged vision issues, Plaintiff stated that his vision was impacted for the past 10 to 15 years (Tr. 44). However, in response to a question by the ALJ, Plaintiff said that he believed his vision had gotten worse as he aged (*Id.*). Plaintiff also indicated that glasses helped him with seeing far, and that he still drove (Tr. 45).

When questioned about why he stopped working, Plaintiff said he resigned because he could no longer work due to the pain of performing his work tasks (Tr. 45-46). Plaintiff described his pain as constant, but said he was told by Dr. Wade that he would have to learn to live with it as there was nothing further they could do (Tr. 46). When questioned why he had not gotten MRIs in 2021 following a referral, he indicated he was unable to do so because he was spending a lot of time watching his grandson during the pandemic (Tr. 47). However, Plaintiff then explained that he mainly babysat his grandson using commands and making smaller movements from couches to chairs to brief walks (Tr. 48).

Vocational Expert Dr. Randy Salmons testified in the middle and at the end of the hearing before the ALJ (Tr. 40-41, 49-53). During the first examination, the Vocational Expert stated that he had not yet determined a classification for Plaintiff's earlier managerial job working at the Ford dealership (Tr. 40). However, the Vocational Expert classified Plaintiff's more recent technical service writer job as past relevant work as an automobile repair service estimator, found in the Dictionary of Occupational Titles ("DOT") at 620.261-018 (Tr. 40). According to the Vocational Expert and the DOT, an automobile repair service estimator requires light exertion (*Id.*). However, the Vocational Expert stated that based upon Plaintiff's testimony, he may have actually been performing the position at an exertion level of medium or higher (Tr. 40-41). No further discussion of or challenge to the Vocational Expert's classification occurred at that time (*Id.*).

The Vocational Expert was subsequently reexamined and classified Plaintiff's older managerial job as an automobile specialty services manager, DOT 185.167-074 (Tr. 49). According to the Vocational Expert and the DOT, an automobile specialty services manager is a skilled position with a light exertion level (Tr. 49). The ALJ then questioned the Vocational Expert whether a hypothetical individual of Plaintiff's age, education, and work experience, could perform both the automobile repair service estimator position and the automobile specialty services manager position with limitations including a light exertional level and only occasional balancing, stooping, crouching, kneeling, crawling,

and climbing ladders, stairs, ramps, and ropes. (Tr. 49-50).[4] The Vocational Expert answered that an individual with those limitations could perform both jobs (Tr. 50). However, when questioned if an individual could still perform those jobs if they were limited to only frequent far acuity, the Vocational Expert explained the individual could not perform the service estimator position because it requires road testing (Tr. 50). The Vocational Expert believed the individual may be able to perform the managerial position, depending on factors such as what tasks their employer expects them to complete and if they are responsible for road testing (Tr. 50).[5] Additionally, when asked if the hypothetical individual would be able to perform either job if limited to being off task 20 percent of the day or being absent four times per month or only standing for ten minutes and lifting five pounds, the Vocational Expert answered that no jobs existed in the national labor market if any of those limitations were imposed (Tr. 50-51).

Plaintiff's counsel then asked the Vocational Expert if Plaintiff's earlier job as an automobile specialty service manager was actually "a composite job with his automobile repair service estimator?" (Tr. 52). The Vocational Expert said that it did appear to be a

---

[4] To be precise, the ALJ asked the following:

> Please assume an individual of the same age, education, and work experience as the claimant. This individual would be able to perform work at a light exertional level as defined by the regulations. Occasional climb ramps or stairs. Occasional climb ladders, ropes, or scaffolds. Occasional balance, stoop, crouch, kneel, crawl. Would this individual be able to perform claimant's past work?

(Tr. 49).

[5] For clarity's sake, it is worth explaining that the Vocational Expert testified that with far acuity limitations, the hypothetical individual would not be able to perform "the first job because the definition in the job description does require road testing." (Tr. 50). In referencing "the first job," the Vocational Expert must have been talking about Plaintiff's more recent technical service writer position because only that job includes road testing in the DOT description. *Compare* DOT 620.261-018 *with* DOT 185.167-074.

composite job based upon Plaintiff's testimony (Tr. 52). The ALJ then asked for clarification of that point, and the Vocational Expert reiterated that the manager position would be a composite job because he was also performing the tasks of an automobile repair service estimator (Tr. 53). The Vocational Expert also testified that the automobile repair service estimator position could be performed at a light exertional level, but Plaintiff appeared to have actually performed it a medium exertional level (Tr. 53).

### THE ALJ'S DECISION

The ALJ followed the five-step analytical framework outlined above. The ALJ first determined that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2022 (Tr. 15). At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity from his alleged onset date of July 19, 2019, through his date last insured (Tr. 15).

At step two, the ALJ found that through the date last insured, Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease, and obesity (Tr. 15-16). The ALJ also found Plaintiff had the non-severe, medically determinable impairments of carpal tunnel syndrome ("CTS") and diabetes (Tr. 16). The ALJ noted that medical records demonstrated that both Plaintiff's CTS and diabetes were well managed (Tr. 17). Turning to the issue of Plaintiff's vision, the ALJ stated, "[a]dditionally, though the claimant has alleged vision issues, associated with his diabetes, the claimant's primary care physician records have not established any vision impairments, with the claimant showing normal sclera and conjunctivae." (Tr. 17). Finally, the ALJ also found Plaintiff had a non-medically determinable impairment of fibromyalgia (Tr. 17).

At step three, the ALJ held that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-19). The ALJ specified that Plaintiff's back issues did not meet listing 1.15 or 1.18, and he likewise did not meet or equal a listing when considering his other impairments in combination with his obesity (Tr. 18).

Before turning to step four, the ALJ analyzed Plaintiff's RFC (Tr. 19-23). The ALJ found:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.15672(b), except: occasionally climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally balance, stoop, crouch, kneel, or crawl.

(Tr. 19). In reaching this conclusion, the ALJ stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20).

In evaluating and determining Plaintiff's RFC, the ALJ relied upon numerous pieces of evidence supporting the conclusion that Plaintiff's spinal issues appeared to be largely managed with medication (Tr. 23). The ALJ first observed that Plaintiff's medical records from Dr. Wade evinced that he had a full range of motion in his back, without the loss of strength or sensation (Tr. 20). The ALJ did acknowledge that Dr. Wade's records documented that Plaintiff sometimes experienced back pain with range of motion and/or palpation, particularly after his car accident, but the ALJ also emphasized that

Plaintiff consistently demonstrated a good range of motion with normal strength and sensation (Tr. 20-21). The ALJ likewise noted that Plaintiff's visits with Dr. Feinerman showed Plaintiff had good strength and sensation, with an appropriate range of motion (Tr. 20-21).

The ALJ reviewed the RFC findings of state examiners Dr. Mikell and Dr. Madala (Tr. 21). The ALJ found their opinions to be partially persuasive, explaining that they were supported by their own detailed summary and analysis of the evidence (Tr. 21). The ALJ continued by stating:

> However, in giving the claimant every benefit of the doubt, the undersigned has found the findings are not entirely consistent with the medical evidence, as exhibits confirm degenerative findings in the spine (Exhibit 3F) and the claimant has exhibited consistent lower back pain (Exhibit 12F) which would support the need for greater postural activities than contemplated by the State examiner.

(Tr. 21). The ALJ next considered Dr. Feinerman's findings that Plaintiff had no difficulties "with tandem walking, standing on heels or toes, squatting and rising, and would be able to sit, stand, walk, lift, carry, and handle objects." (Tr. 21). Similar to her conclusions regarding the state examiners, the ALJ found Dr. Feinerman's assessments to be partially persuasive, but again thought that due to Plaintiff's ongoing complaints of pain to Dr. Wade, the record supported restricting Plaintiff to light work, with postural limitations (Tr. 21-22).

The ALJ did not find massage therapist Millie Zey's statements and findings to be persuasive (Tr. 22). The ALJ criticized the absence of any medical records from Ms. Zey, especially when considering Plaintiff had allegedly been seeing Ms. Zey twice a month

since 2012 (Tr. 22). Without any treatment notes, the ALJ found Ms. Zey's findings to be unsupported (Tr. 22). Moreover, the ALJ emphasized that Ms. Zey's unsupported determinations conflicted with the objective medical evidence and record as a whole (Tr. 22). The ALJ stated "[t]he suggestion by Ms. Zey that the claimant could not work at all is contradictive to the objective findings, which continued to show normal strength and sensation (Exhibit 9F), intact gait (Exhibit 12F/17-19), and normal range of motion throughout (Exhibit 12/4-6)." (Tr. 22).

The ALJ also considered Dr. Wade's medical source statement and found it to be unpersuasive (Tr. 22-23). Significantly, the ALJ noted that Dr. Wade's medical source statement, which imposed highly restrictive limitations such as limiting standing or walking to one hour in an eight-hour workday, was not supported by Dr. Wade's own medical records and treatment notes (Tr. 22). The ALJ emphasized that Dr. Wade's records showed Plaintiff did not exhibit gait abnormalities, loss of strength, or loss of sensation, and his range of motion remained intact even after he began experiencing some pain with palpation or range of motion (Tr. 22-23). Likewise, Dr. Wade's statement was contradicted by other medical records in the file, such as those from Plaintiff's visits with Dr. Feinerman (Tr. 23). Further, the ALJ observed that "there is nothing in the record to support a need for manipulative restrictions, especially a total prohibition against them, or that the claimant would be absent three or more times a month." (Tr. 23).

At step four, the ALJ determined that through the date last insured, Plaintiff was capable of performing past relevant work as an automobile repair service estimator and as an automobile specialty service manager (Tr. 23-24). In reaching this conclusion, the

ALJ relied upon the Vocational Expert's testimony that even with the limitations posed in the ALJ's hypothetical, Plaintiff would be able to perform both jobs as generally performed in the national economy (Tr. 24). The ALJ also noted that the Vocational Expert's testimony was based upon his substantial experience and consistent with the DOT (Tr. 24).[6] Finally, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 19, 2019, the alleged onset date, through June 30, 2022, the date last insured." (Tr. 24).

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issue:

1. Plaintiff's RFC is not supported by substantial evidence and the ALJ failed to properly consider the medical opinions (Doc. 18 at pp. 2-6).
2. The ALJ failed to properly consider Plaintiff's subjective complaints of pain (*Id.* at pp. 8-11).[7]
3. The ALJ erred by misrepresenting Plaintiff's past relevant work experience as two separate titles instead of as a composite job (*Id.* at pp. 6-8).

## DISCUSSION

I.   *The ALJ's determination as to Plaintiff's RFC is supported by substantial evidence and properly considers the medical opinions and Plaintiff's subjective complaints of pain.*

Plaintiff raises several arguments challenging the ALJ's determination of his RFC

---

[6] In summarizing her decision, the ALJ stated that the "undersigned questioned the vocational expert if the positions discussed above were composite jobs, although based upon vocational testimony, the expert testified they were not composite." (Tr. 24). Additionally, the ALJ concluded that even though the Vocational Expert testified to the contrary, there was a high likelihood Plaintiff's skills were transferable to other light work (Tr. 24). The Court has reservations about both of these statements and will discuss them further in the analysis section of this Order. Ultimately, however, neither statement impacts the Court's ultimate conclusion in this case.

[7] This issue was not clearly listed under a new heading or subheading and was included after Plaintiff's composite job challenge (*see generally* Doc. 18). However, the Court believes it is more appropriately related to Plaintiff's challenge to the ALJ's RFC determination. Consequently, the Court jointly considers both this issue and Plaintiff's first challenge related to the ALJ's RFC determination.

(*see* Doc. 18). First, Plaintiff argues the ALJ erred in determining his RFC because the ALJ failed to properly consider the medical opinions (*Id.* at pp. 2-6). Similarly, Plaintiff argues the ALJ erred by failing to properly consider Plaintiff's subjective complaints of pain (*Id.* at pp. 8-11). In response, the Commissioner argues the ALJ's determination of Plaintiff's RFC was supported by and reasonably considered the medical evidence, opinions, and prior administrative findings, and reasonably considered Plaintiff's subjective complaints of pain (*see generally* Doc. 23).

RFC is an assessment of what work-related activities an individual can do despite his or her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004) (citing 20 C.F.R. § 404.1545(a)). An individual's RFC should be assessed based upon all relevant evidence in the record. *Id.* However, the Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Nevertheless, an ALJ is not permitted to present a skewed version of evidence, and instead must confront the evidence that does not support her conclusion and explain why it was rejected. *Id.*

Plaintiff contends that the ALJ's decision summarizes "some of the medical evidence" but fails to explain how the evidence supports the ultimate RFC findings (Doc. 18 at p. 3).[8]  The Court is not persuaded. The ALJ's analysis of the medical evidence was

---

[8] Plaintiff also argues that it was improper to rely upon evidence from Plaintiff's August 2020 appointment with Dr. Feinerman because the doctor refers to records from a physician's assistant that were not part of

thorough and comprehensive. For one, the ALJ appropriately explained why she found the opinions of Dr. Wade and Ms. Zey to be unpersuasive. In the case of Ms. Zey, she noted that her findings were not supported by any medical records or evidence whatsoever (Tr. 22). Moreover, they were inconsistent with the medical records that were actually in the record, which consistently demonstrated that Plaintiff "continued to show normal strength and sensation, intact gait, and normal range of motion throughout." (Tr. 22). Similarly, the ALJ comprehensively explained why she found Dr. Wade's March 2021 questionnaire to be unpersuasive (Tr. 22-23). As the ALJ explained, Dr. Wade provided no explanation for why he was imposing the specified manipulative limitations and standing, walking, and sitting limitations (Tr. 22). And notably, neither Dr. Wade's medical records nor Dr. Feinerman's medical records provided any support for such stringent limitations as they all concluded that Plaintiff did not exhibit any gait abnormalities, loss of strength, or loss of sensation (Tr. 22). Given the discrepancies between both Ms. Zey and Dr. Wade's questionnaires and the objective medical evidence, it was entirely appropriate for the ALJ to find both individual's assessments to be unpersuasive. And importantly, the ALJ's explanation sufficiently articulated her reasoning for finding them to be unpersuasive. *See, e.g.*, *Henderson v. Kijakazi*, No. 22 C

---

the transcript in this case (Doc. 18 at p. 3). This argument lacks merit. For one, Dr. Feinerman only briefly summarized four old records in his examination report, and there is no indication from that report that Dr. Feinerman's August 2020 examination was swayed in any way by those old records (Tr. 313-14). Furthermore, at the August 2022 disability hearing before ALJ Fuller, Plaintiff's counsel was asked if there were any documents outstanding that should be a part of the record, to which counsel responded, "No, Your Honor. Based on my review, the record is complete." (Tr. 34). In addition, the Court notes that Plaintiff has no issue with relying upon massage therapist Millie Zey's opinion, which included higher limitations, even when her opinion did not cite or provide any underlying records whatsoever (*see* Doc. 18 at p. 3).

3890, 2023 WL 6388143, at *3 (N.D. Ill. Sept. 29, 2023) ("Here, the ALJ minimally articulated her reasoning for finding Dr. Childers' opinion unpersuasive by identifying discrepancies between Dr. Childers' opinion in the MIQ, on the one hand, and Dr. Childers' treatment notes, the record and Lindsey's personal attestations, on the other.").[9]

The ALJ 's finding that Dr. Mikell's and Dr. Madala's evaluations were partially persuasive was also well-explained and supported by the record (Tr. 21). The ALJ first observed that both examinations were detailed and comprehensively examined the medical evidence before them (TR. 21). However, rather than simply adopt their recommendations, the ALJ attempted to give Plaintiff "the benefit of the doubt" by imposing postural limitations more restrictive than those suggested by the two state examiners (Tr. 21). In explaining these greater restrictions, the ALJ pointed to evidence of "degenerative findings in the spine" and Plaintiff's longstanding complaints of lower back pain (Tr. 21). Thus, the ALJ fairly considered these medical opinions in reaching her determination of Plaintiff's RFC.

Moreover, to the extent Plaintiff argues the ALJ erred by not including or addressing the state examiner's standing/walking and sitting limitations in her RFC determination (Tr. 19) and hypothetical to the Vocational Expert (Tr. 49), this is of no

---

[9] Plaintiff also argued that "the ALJ did not discuss why the visual limitations were not included[.]" (Doc. 18 at p. 4). The Court disagrees. The ALJ acknowledged the evidence related to Plaintiff's alleged vision issues and then explained why she was not persuaded by it. Which, in this case, was because Plaintiff's primary care records did not document any vision impairments (Tr. 17). The ALJ also questioned Plaintiff regarding his vision issues and the ALJ's decision notes that Plaintiff admitted to having dealt with vision issues for 10-15 years (Tr. 16, 44). Moreover, Plaintiff testified that glasses help with his ability to see far, and he still drove (Tr. 45). Additionally, although some of the ALJ's vision discussion occurred prior to the RFC analysis, "blending the step-three and RFC analysis is not fatal in itself, so long as the ALJ at some point in his decision builds a logical bridge between the evidence and each conclusion." *Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1144 (N.D. Ill. 2011).

consequence. Admittedly, "[a]n RFC must be specific about the required frequency of standing and sitting" and here the ALJ's RFC determination does not expressly mention six-hour workday limitations. *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). However, it was sufficient that the ALJ specified a light-work limitation as defined by 20 C.F.R. § 404.1567(b)[10] in both the RFC and the hypothetical (Tr. 19). This is because Social Security Rule 83-10 clarifies § 404.1567(b) by providing specific time limitations. Pursuant to SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."[11]

A nearly identical challenge was lodged in *Petersin v. Kijakazi*, No. 21-CV-768-JDP, 2023 WL 128670, at *3 (W.D. Wis. Jan. 9, 2023). In that case, the ALJ stated that the claimant could perform light work as defined by § 404.1567(b) but did not specify the number of hours the employee could stand, sit, walk, lift, or carry. *Id.* Consequently, the Plaintiff challenged the ALJ's failure to identify specific amounts of time that he could perform those activities for. *Id.* The court rejected this argument, stating:

> Petersin's argument fails because the more general definition of light work in § 404.1567(b) is clarified in SSR 83-10 and provides specific time limitations. SSR 83-10 is a longstanding rule that is often cited by the court of appeals to define light work. *See, e.g., Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022); *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022); *Hill v. Colvin*, 807 F.3d 862, 866 (7th Cir. 2015). So it is reasonable to infer that the ALJ's RFC incorporated SSR 83-10 even if he didn't expressly cite it.

---

[10] The ALJ's opinion includes a typographical error by referencing this regulation as 20 C.F.R. § 404.15672(b) (*see* Tr. 19). However, it is clear the ALJ was referencing 20 C.F.R. § 404.1567(b). Accordingly, the Court will reference the appropriate statutory citation in its discussion of this regulation.

[11] As explained in *Bradley S. v. Kijakazi*, No. 20-CV-4748, 2022 WL 1121354, at *3, fn. 2 (N.D. Ill. Apr. 14, 2022), SSR 83-10 states that its purpose is to address the issue of capability to do other work. Yet, here Plaintiff was found to be able to perform his past relevant work (Tr. 23-24). However, as in *Bradley*, the Court believes that "the definition of light work in SSR 83-10 is relevant here to determine whether Plaintiff could perform [past relevant] work, which the ALJ found to be light work." *Id.*

> In his reply brief, Petersin contends that SSR 83-10 doesn't help because that rule "envisions several possible ranges of work falling within its ambit." Dkt. 18, at 10. It's true that light work is a category, not a precise definition. But in the absence of express limitations in the ALJ's decision, it is reasonable to infer that an ALJ's reference to light work encompasses the maximum amounts specified in the category.

*Id.* Here, the Court finds the reasoning articulated in *Petersin* persuasive and reaches the same conclusion. While the ALJ did not expressly include standing/walking and sitting workday hour restrictions, it is reasonable to conclude the ALJ's RFC incorporated SSR 83-10, even if it was not directly cited. And pertinently, the maximum time limitations for standing/walking with light work are identical to those recommended by the state examiners. Consequently, as in *Petersin*, the Court finds the ALJ's failure to specifically state the maximum amounts of time Plaintiff could stand/walk and sit does not justify reversal due to the ALJ's imposition of a light work requirement including a citation to § 404.1567(b), along with the ALJ's detailed explanations as to why she rejected the more restrictive standing/walking and sitting limitations imposed by Dr. Wade and Ms. Zey.

The Court is likewise not persuaded by Plaintiff's arguments that the ALJ did not properly consider Plaintiff's subjective complaints of pain (Doc. 18 at pp. 8-11). To the contrary, the ALJ did more than just consider Plaintiff's subjective complaints of pain. The ALJ both acknowledged Plaintiff's subjective complaints in her analysis and imposed greater postural limitations than those imposed by the medical assessments she found to be at least partially persuasive. (Tr. 21-23) For instance, in finding the state examiner's reports to be only partially persuasive, the ALJ stated, "in giving the claimant every benefit of the doubt, the undersigned has found the findings are not entirely consistent

with the medical evidence, as exhibits confirm degenerative findings in the spine and *the claimant has exhibited consistent lower back pain which would support the need for greater postural activities than contemplated by the State examiner*." (Tr. 21) (emphasis added).

In other words, this is not a case where the ALJ ignored or entirely discredited Plaintiff's subjective complaints of pain. *See, e.g.*, *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (explaining that an ALJ may not discount or ignore subjective complaints of pain solely because they were not be substantiated by objective medical evidence); *but see Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) ("The Commissioner is correct that when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion."). Rather, the ALJ explicitly crafted additional restrictions to account for the medical evidence documenting Plaintiff's spinal degeneration and his subjective complaints of lower back pain (Tr. 21-23). The Court finds this to be sufficient.

II.    *Plaintiff is able to work as an automobile repair service estimator with the limitations imposed by the ALJ and his related past work was not a composite job.*

Plaintiff also argues that the ALJ erred by not finding Plaintiff's past relevant work to be composite jobs (Doc. 18 at pp. 6-8). Additionally, the Plaintiff argues that ALJ erred by substituting her opinion for that of the Vocational Expert by finding that Plaintiff had transferable skills based upon Medical Vocational Rule 202.07. The Court does not believe either argument merits reversal.

"A claimant will be found to be 'not disabled' if it is determined that: (1) the claimant has the RFC to perform the 'actual functional demands and job duties of a particular past relevant job'; or (2) the claimant has the capacity to perform the 'functional

demands and job duties of the occupation as generally required by employers throughout the national economy.'" *Polchow v. Astrue*, No. 10 CV 6525, 2011 WL 1900065, at *19 (N.D. Ill. May 19, 2011). However, additional considerations apply to this analysis when dealing with composite jobs. "Composite jobs are those which 'have significant elements of two or more occupations and, as such, have no counterpart in the DOT.'" *Wiggins v. Colvin*, No. 12 CV 9384, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015) (quoting SSR 82–61, 1982 WL 31387, at *2). And significantly, "if the prior position was a composite job, then the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019). *See also Barnett v. Colvin*, No. 13-CV-781-CJP, 2014 WL 7450077, at *7 (S.D. Ill. Dec. 30, 2014) ("Simply put, if the Wolf Lake [postmaster] job was a composite job, the ALJ erred in finding at step four that plaintiff could do the job of postmaster as it is usually performed."). Furthermore, in situations where the record does not clearly demonstrate whether a prior job was a composite job, courts in this circuit have considered several factors including: (1) whether the claimant was represented by counsel at the hearing before the ALJ; (2) whether the claimant raised the composite job issue at the hearing; and (3) whether the claimant's testimony before the ALJ characterized his or her past relevant work as a composite job. *See Sonja B. v. Kijakazi*, No. 320CV00284RLYMPB, 2022 WL 2496127, at *5 (S.D. Ind. June 21, 2022).

The Court does question the ALJ's conclusion that neither of Plaintiff's prior positions were composite jobs (Tr. 24). Indeed, the hearing transcript demonstrates that the Vocational Expert found Plaintiff's earlier managerial position to be a composite job

(Tr. 52). For example, the following exchange occurred between Plaintiff's counsel and the Vocational Expert:

Counsel:  Just one point of clarification to start with. The manager automobile specialty service title, and correct me if I'm wrong, but I'm assuming that's being identified as the work performed from like 2008 to 2010.
I think my client mentioned night service manager. But he also testified that he performed all if not most of the duties he did at the subsequent position, which you identified. So what I'm asking, I guess, is was the manager automobile specialty service a composite job with his automobile repair service estimator?

Vocational Expert:  Based on his testimony, I would agree, I would agree with you. And it's not, and it's fairly commonplace that managers on occasion involve themselves in the work of their subordinates, which in this case was verified by testimony.

(Tr. 51-52). As a result, it was erroneous for the ALJ to conclude that Plaintiff's prior managerial position was not composite job, as the hearing testimony on this point refutes this contention and the ALJ's summarization. Therefore, as the Seventh Circuit has explained, the ALJ should not have relied upon Plaintiff's prior composite job in determining that he could perform past relevant work as generally performed. *See Ray*, 915 F.3d at 491.

Nevertheless, this mistake was harmless because Plaintiff could still perform his more recent past relevant work as generally performed, since that position was not a composite job (Tr. 40-41). *See Wiggins v. Colvin*, No. 12 CV 9384, 2015 WL 2398478, at *7 (N.D. Ill. May 18, 2015) ("The ALJ's failure to clarify his finding that Wiggins's past relevant work is that of an addressing machine operator might be harmless if he correctly determined that Wiggins could return to her past relevant work as a telemarketer."). In

fact, when the Vocational Expert was asked about composite jobs, those questions only concerned whether Plaintiff's earlier managerial position constituted a composite job (Tr. 51-53). So, although the Vocational Expert believed Plaintiff's earlier managerial position was a composite job including both a managerial role and an estimator role (Tr. 51-52), a similar finding was not made when reviewing Plaintiff's more recent job as a technical service writer (Tr. 40-41).

Turning to the factors outlined in *Sonja B.*, the Court first notes that Plaintiff was represented by counsel at the hearing. *See Combs v. Berryhill*, No. 116CV02386JMSTAB, 2017 WL 2728619, at *6 (S.D. Ind. June 26, 2017) ("First, Ms. Combs was represented by counsel during her January 2015 hearing before the ALJ."). Second, neither Plaintiff nor his counsel inquired as to whether Plaintiff's more recent position as a technical service writer constituted a composite job (Tr. 40-41). *Id.* ("Second, during the hearing, neither she nor her counsel raised the issue of whether her job constituted a composite job."). And third, Plaintiff did not characterize his past relevant work as a technical service writer as a composite job during the hearing. *Id.* ("Finally, throughout her testimony, Ms. Combs made no statements describing her past relevant work as a composite job."). Plaintiff stated his job duties included discussing automotive issues with customers, road testing cars, writing technical tickets, working with mechanics to diagnose automobile issues, order parts, and repair cars (Tr. 36-39). This testimony as to his duties matches the DOT's description of the duties for an automobile repair service estimator found at DOT

620.261-018.[12] Furthermore, the Vocational Expert's testimony on this topic did not conflict with the DOT's job description and duties for an automobile repair service estimator (Tr. 36-39). *See Polchow v. Astrue*, No. 10 CV 6525, 2011 WL 1900065, at *19 (N.D. Ill. May 19, 2011) ("If the VE's testimony appears to conflict with the DOT, SSR 00–4p requires an ALJ to obtain 'a reasonable explanation for the apparent conflict' before relying on that evidence to support a finding that a claimant is not disabled.").

Having considered all of the above factors, the Court concludes that the ALJ did not err in finding that Plaintiff's more recent position was not a composite job. Therefore, it was appropriate for the ALJ to evaluate and find that Plaintiff could perform that job as generally performed in the national economy, even though he could no longer perform it as he actually did in the past. *See Garcia v. Colvin*, No. 12 C 4191, 2013 WL 3321509, at *11 (N.D. Ill. June 28, 2013) ("As a general matter, a claimant is not disabled if he maintains the RFC to perform his past relevant work either as he actually performed it or

---

[12] DOT 620.261-018 provides:

TITLE(s): Automobile Repair Service Estimator (automotive ser.) alternate titles: automobile inspector; collision estimator; manager, service; mechanic, trouble-shooting; sales associate, garage service; service writer[.]

Inspects and tests automobiles and trucks to determine need for and cost of repairs: Determines need for repairs by road test [AUTOMOBILE TESTER (automotive ser.) 620.261-014], by use of mechanical testing devices [BRAKE REPAIRER (automotive ser.) 620.281-026; FRONT-END MECHANIC (automotive ser.) 620.281-038], by questioning customer about vehicle's performance, or by visual inspection of vehicle. Estimates cost of repair and prepares itemized work order, listing costs of parts and labor. May make minor adjustments or repairs, such as brake adjustment, battery cable replacement, or hinge lubrication. May supervise AUTOMOBILE-BODY REPAIRER (automotive ser.) 807.381-010; AUTOMOBILE MECHANIC (automotive ser.) 620.261-010; PAINTER, TRANSPORTATION EQUIPMENT (aircraft mfg.; air trans.; automotive ser.) 845.381-014; and other garage workers. May be designated according to specialty as Truck-Repair-Service Estimator (automotive ser.).

GOE: 05.07.02 STRENGTH: L GED: R4 M3 L3 SVP: 7 DLU: 79

as it is generally performed in the national economy."). Moreover, because the ALJ's determination as to Plaintiff's past relevant work as a technical service writer was not erroneous, the ALJ's error related to Plaintiff's managerial position was harmless. *See Hauser v. Astrue*, No. 08-CV-321, 2009 WL 679653, at *8 (E.D. Wis. Mar. 16, 2009) ("The government argues that mistaken identification of the machine operator work is harmless because the ALJ also found Hauser's security jobs to be past relevant work. The government is correct. The ALJ's finding that Hauser can perform his past relevant work as a security guard renders the mistake inconsequential for step four evaluation.").

Finally, the Court addresses Plaintiff's argument that the ALJ erred in finding that Plaintiff's skills from his past relevant work were transferable, in conflict with the Vocational Expert's testimony (Doc. 18 at pp. 7-8). Undoubtedly, the Vocational Expert testified that Plaintiff had no transferable skills (Tr. 50). However, regardless of whether it was erroneous for the ALJ to disagree with the Vocational Expert's testimony on skill transferability, this issue does not warrant reversal because Plaintiff could perform his more recent past relevant work as generally performed in the national economy and therefore, no analysis of skill transferability was required. "Transferability of skills *is an issue only when* an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations *but does prevent the performance of past relevant work (PRW)*, and that work has been determined to be skilled or semiskilled." SSR 82-41 (emphasis added). *See also Abbott v. Astrue*, 391 F. App'x 554, 558 (7th Cir. 2010) (Explaining that courts have vacated judgments in disability cases when an ALJ failed to identify or make specific findings about skill transferability, when

"those findings were material to the outcome."). In simpler terms, the issue of skill transferability is a part of the ALJ's analysis conducted at step five and is not necessary when the analysis ends at step four. *See Simcoe v. Colvin*, No. 1:14-CV-01488-SEB, 2015 WL 3960964, at *3 (S.D. Ind. June 29, 2015) ("Social Security Ruling ('SSR') 82–41 requires an ALJ 'to make certain findings of fact' about the transferability of job skills, but only in cases '[w]hen the issue of skills and their transferability must be decided.'"). Therefore, regardless of whether the ALJ's skill transferability determination was supported or not, any error would be harmless as it would not impact the ALJ's finding that Plaintiff could perform past relevant work as generally performed in the national economy. *See Veasey v. Astrue*, No. 3:11-CV-467 CAN, 2012 WL 5866308, at *12 (N.D. Ind. Nov. 19, 2012) (finding the ALJ's error related to skill transferability to be harmless because it didn't impact the ultimate outcome of the case).

<div align="center">

C<small>ONCLUSION</small>

</div>

After careful review of the record as a whole and for the reasons discussed above, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED:** September 23, 2024

<div align="right" style="margin-right:25%">

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

</div>